CV 13 - 6801

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SUMMONS ISSUED

--------------------------------------------------------------------- x

CARLOTTA AND MILOTTA JOHNSON,

Plaintiffs,

-against-

THE CITY OF NEW YORK, POLICE OFFICER
DARNAY HARRIS, AND JOHN DOE POLICE
OFFICERS #1-4,

Defendants.

**COMPLAINT AND
JURY DEMAND**



--------------------------------------------------------------------- x

## PRELIMINARY STATEMENT

1.    This is a civil rights action in which plaintiffs seek relief for the violation of their rights

secured by 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments to the United States

Constitution, and the laws and Constitution of the State of New York.

2.    The claims arise from a May 31, 2011 incident in which Officers of the New York City

Police Department ("NYPD"), acting under color of state law, intentionally and willfully

subjected plaintiffs to, among other things, false arrest and malicious prosecution.

3.    Plaintiffs seek monetary damages (special, compensatory, and punitive) against

defendants, as well as an award of costs and attorneys' fees, and such other and further relief as

the Court deems just and proper.

## JURISDICTION

4.    This action is brought pursuant to 28 U.S.C. §1331, 42 U.S.C. §1983, and the First,

Fourth and Fourteenth Amendments to the United States Constitution.

5.    Venue is laid within the United States District Court for the Eastern District of New

York in that Defendant City of New York is located within, and the events occurred within, the

boundaries of the Eastern District of New York.

## PARTIES

6.    Plaintiffs are citizens of the United States and at all times here relevant, resided in Kings County, State of New York.

7.    The City of New York is a municipal corporation organized under the laws of the State of New York.

8.    Detective Darnay Harris was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, defendant Harris was involved in the decision to arrest plaintiffs without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting plaintiffs without probable cause.  Detective Harris is sued in his individual capacity.

9.    All others individual defendants ("the officers") are employees of the NYPD, and are sued in their individual capacities.

10.   At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## FACTUAL ALLEGATIONS

11.   On May 31, 2011, plaintiff Milotta Johnson and her mother Carlotta were asleep inside their home at 1470 Sterling Pl., Brooklyn, NY. At approximately 6AM, the defendant officers came into the home with their guns drawn and handcuffed all the home's occupants.  Plaintiff Milotta was taken from her bedroom, handcuffed and placed in the living room.  Plaintiff Carlotta was taken from a different room and also handcuffed.  Two other occupants of the house

2

were also detained.

12. The defendant officers then began conducting a search of the premises. The apartment was ransacked, drawers were open, furniture overturned and closets emptied. No illegal contraband was discovered.

13. As more officers responded and the search continued for many hours, the officers claim to have recovered one zip lock of crack cocaine from inside one of the bedrooms and one marijuana cigarette from inside Carlotta's husband's pocket. No illegal substances were found in Milotta's room, in her vicinity or on her person.

14. Milotta was taken out of the apartment handcuffed and placed in a police vehicle. She was taken to the precinct where she was again searched. She remained handcuffed inside the precinct for many hours until she was released with a Desk Appearance Ticket. After one appearance in response to the DAT, she learned that the District Attorney declined to prosecute her case.

15. Carlotta remained handcuffed in her home for more than five hours even after several family members were removed. Eventually the officers left the location without taking Carlotta with them.

16. Six months after the arrest, plaintiff Carlotta was served with eviction papers from the City of NY. That motion made by the City was supported by an affidavit sworn to by Detective Darnay Harris and claimed the Johnson home was used for selling marijuana. After making appearances in Kings County Supreme Court, the matter was resolved without the Johnson family being evicted.

17. At all times during the events described above, the defendant police officers were engaged in a joint venture and formed an agreement to violate plaintiff's rights. The individual

3

officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events. They failed to intervene in the obviously illegal actions of their fellow officers against plaintiffs, and agreed, shortly after the incident, not to report each others' illegal actions and to fabricate a story and falsely charge plaintiffs with offenses.

18.     During all of the events above described, defendants acted maliciously and with intent to injure plaintiff.

## DAMAGES

19.     As a direct and proximate result of the acts of defendants, plaintiffs suffered the following injuries and damages:

a.      Violation of their rights pursuant to the Fourth and Fourteenth Amendments to the United States Constitution to be free from an unreasonable search and seizure;

b.      Violation of their right to Due Process of Law under the Fourteenth Amendment to the United Stated Constitution;

c.      Violation of their New York State Constitutional rights under Article 1, Section 12 to be free from an unreasonable search and seizure;

d.      Violation of their New York State Constitutional right under Article 1, Section 6 to Due Process of Law;

e.      Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety and separation from family;

f.      Loss of liberty;

4

## FIRST CAUSE OF ACTION
(42 U.S.C. § 1983)

20.   The above paragraphs are here incorporated by reference.

21.   Defendants acted under color of law and conspired to deprive plaintiffs of their civil, constitutional and statutory rights to be free from unreasonable search and seizure, due process of law pursuant to the First, Fourth and Fourteenth Amendments to the United States Constitution, and are liable to plaintiffs under 42 U.S.C. §1983.

22.   Defendants falsely arrested plaintiffs, maliciously prosecuted them and failed to intervene in each other's obviously illegal actions.

23.   Plaintiffs have been damaged as a result of defendants' wrongful acts.

## SECOND CAUSE OF ACTION
(MUNICIPAL AND SUPERVISORY LIABILITY)

24.   The above paragraphs are here incorporated by reference.

25.   The City is liable for the damages suffered by plaintiffs as a result of the conduct of their employees, agents, and servants, in that, after learning of their employees' violation of plaintiffs' constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event.

26.   The City has been alerted to the regular use of false arrests by its police officers, but has nevertheless exhibited deliberate indifference to such false arrests; that deliberate indifference caused the violation of plaintiffs' constitutional rights in this case.

27.   The aforesaid event was not an isolated incident. The City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of

law, that a disturbing number of their police officers use excessive force, unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers. Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist.

28. For example, the well documented failures of the Civilian Complaint Review Board ("the CCRB"), a City agency, to substantiate obviously meritorious citizen complaints have gone uncorrected. The CCRB regularly finds complainants lack credibility based on the fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice that often results in not substantiating the most serious charges brought to them. In addition, the CCRB virtually never initiates their own findings of false statements against officers who have made false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB. The CCRB has no enforcement mechanisms once making a finding against an officer; it can only make recommendations to the NYPD, once finding misconduct by an officer.

29. The NYPD, once receiving a substantiated complaint by the CCRB, fails to adequately discipline officers for misconduct. The NYPD Department Advocate, which is endowed with the responsibility of following up on substantiated CCRB charges, is understaffed and under-utilized. Furthermore, in the extraordinarily rare event that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer.

30. Further, the City has no procedure to notify individual officers or their supervisors of

unfavorable judicial review of their conduct.   Without this notification, improper search and

seizure practices and incredible testimony go uncorrected.   Additionally, according to a report of

the New York City Bar Association issued in 2000, the City has isolated their law department

from the discipline of police officers, so that civil suits against police officers for actions taken in

their capacity as police officers have no impact on the officers' careers, regardless of the

outcome of the civil actions.   Alan Hevesi, as New York City Comptroller, in 1999 reported that

there was a "a total disconnect" between the settlements of even substantial civil claims and

police department action against officers.

31.   The City is aware that all of the aforementioned has resulted in violations of citizens'

constitutional rights.   Despite such notice, the City has failed to take corrective action.   This

failure and these policies caused the officers in the present case to violate plaintiffs' civil rights,

without fear of reprisal.   Furthermore, although the City has been on notice, through plaintiffs'

complaints to the CCRB from the first day of the incidents complained of, the City has failed to

remedy the wrong.

32.   Plaintiffs have been damaged as a result of the deliberate indifference of the City and

Kelly to the constitutional rights of the City's inhabitants.

### THIRD CAUSE OF ACTION
(CONSTITUTIONAL TORT)

33.   All preceding paragraphs are here incorporated by reference.

34.   Defendants, acting under color of law, violated plaintiffs' rights pursuant to §§6 and 12

of the New York State Constitution.

35.   A damages remedy here is necessary to effectuate the purposes of §§6 and 12 of the

New York State Constitution, and appropriate to ensure full realization of plaintiffs' rights under

those sections.

WHEREFORE, plaintiff demands judgment against the defendants, jointly and severally, as follows:

A.    In favor of plaintiffs in an amount to be determined by a jury for each of plaintiff's causes of action;

B.    Awarding plaintiffs punitive damages in an amount to be determined by a jury;

C.    Awarding plaintiffs reasonable attorneys' fees, costs and disbursements of this action; and

D.    Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury.

DATED:      Brooklyn, New York
            December 2, 2013

TO:   New York City                          Very truly yours,
      Corporation Counsel Office
      100 Church Street, 4th floor
      New York, NY 10007
                                             Stoll, Glickman & Bellina, LLP
                                             By: Nicole Bellina
      Detective Darnay Harris                Attorney for Plaintiff
      Narcotics Brooklyn North               475 Atlantic Ave. 3rd Fl.
      1 Police Plaza                         Brooklyn, NY 11217
      New York, NY 10006                     (718) 852-3710